BLANCHE D. SCHMIDT, APPELLANT, v. AETNA LIFE INSURANCE CO., ETC., RESPONDENT.—54 S. W. (2d) 431.

Kansas City Court of Appeals. November 21, 1932.

*Crawford & Harlan* for appellant.

*Morrison, Nugent, Wylder & Berger* for respondent.

ARNOLD, J.—This is an action to recover upon a certificate of life insurance issued upon and under the provisions of a certain group policy.

Defendant is an insurance corporation organized under the laws of the State of Connecticut, having its home office at Hartford in said State, and duly authorized to do business in the State of Missouri. The record discloses that on November 14, 1927, defendant issued and delivered to E. M. Milton & Sons and affiliated companies of Sedalia, Missouri, a group policy of insurance, for the benefit of certain of their employees who would accept the benefits thereof by agreement with said employer, among whom was John Schmidt. Under and by virtue of said group policy, a certificate No. 89, was issued by said employer to said John Schmidt, on November 14, 1927, insuring his life for the sum of $1,000, and naming his wife, Blanche D. Schmidt, plaintiff herein, as beneficiary. Under the terms of said insurance, part of the premium was deducted by the employer from the pay of the employee, and the remainder of the premium was paid by the employer who remitted the total premium to the insurer.

On or about the last day of May, 1929, the said John Schmidt left

the employ of said E. H. Milton & Sons, his insurance being paid up to June 14, 1929. On June 30, 1929, John Schmidt died from a hemorrhage sustained during an operation on his tonsils. Thereafter the plaintiff herein, wife and beneficiary named in the certificate, made claim for $1,000, claimed to be due under the certificate of insurance, but defendant company refused payment on the ground the employer had notified defendant that said insured had voluntarily left their employ on the last day of May, 1929, and the employer asked insurer to cancel the insurance as to said John Schmidt, said written request being dated June 15, 1929. The insurance was cancelled, but John Schmidt was never notified of the request nor of the cancellation.

Payment being refused, this suit was instituted by plaintiff, who alleged in her petition the issuance of said insurance, the death of the insured, that she was the beneficiary, and asked judgment against defendant in the sum of $1,000, the amount of the policy, ten per cent thereof for vexatious delay and $250 attorney's fee.

The answer was, first, a general denial, and for affirmative defense, it was alleged said insured left the employment of the Milton Oil Company on or about June 1, 1929, and that the certificate of insurance referred to in plaintiff's first amended petition, as having been issued to the said John Schmidt by the Milton Oil Company, was at the express direction of said oil company cancelled on or about the 13th day of June, 1929, and that no premium was paid by, or on behalf of said insured beyond the period ending June 14, 1929, after which time said certificate and said master policy of insurance, in so far as the same, at any time, had related to plaintiff, were of no force or effect.

The reply was a general denial.

Thereupon the parties entered into a stipulation, as follows:

"Comes now the parties hereto, by their respective attorneys, and waive trial by jury in said cause, and stipulate and agree that said court shall decide said cause upon the following agreed statement of facts, to-wit:

"That the defendant is a corporation, duly organized under and existing by virtue of the laws of the State of Connecticut, and is qualified to do business in the State of Missouri. That on or about the 14th day of November, 1927, the defendant issued and delivered to E. H. Milton & Sons, and Affiliated Companies, a certain group policy number 3960.

"That one John Schmidt was an employee of said Milton & Sons, and that said employer issued, upon November 14, 1927, to the said John Schmidt a certificate number 89, under which Blanche D.

Schmidt was designated as beneficiary of said John Schmidt, under said group policy.

"That part of the premium of said insurance was paid to said employer by said employee, by him authorizing his employer to deduct said funds from his salary, and the balance of said premium was paid by said employer and the total amount forwarded to the defendant. That premiums were payable in advance; that the last payment made by said employee, or anyone for him, was for the period ending June 14, 1929; that said Schmidt, while in good health, resigned as an employee of said employer, on June 1, 1929, because he found work more to his preference.

"That said employer notified the defendant that said employee had ceased making payments as aforesaid, and had voluntarily left their employment on the last day of May, 1929, and requested defendant to cancel said policy as to said employee, John Schmidt. That defendant, in compliance with said request, cancelled said policy as to the said John Schmidt, on or about June 13, 1929, and immediately notified said employer, but did not notify said John Schmidt of the cancellation.

"That the said John Schmidt, nor anyone for him, ever exercised the Conversion Privilege; (the plaintiff does not admit the said John Schmidt was under a duty to exercise such Conversion Privilege) that said John Schmidt died on June 30, 1929, as the result of a hemorrhage sustained during an operation on his tonsils.

"That the copy of said group policy attached hereto is a true copy thereof and is considered in evidence; that the certificate number 89 attached hereto is considered in evidence; that the plaintiff has furnished no formal proofs for the reason that the defendant denied liability.

"(Signed)    Crawford & Harlan,<br>
"Attorneys for Plaintiff.<br>
"Barnett & Hayes,<br>
"Morrison, Nugent, Wylder &<br>
"Berger,<br>
"Attorneys for Defendant."

"Filed Dec. 5, 1931,
"Dimmitt Hoffman,
   "Cir. Judge.

There was introduced in evidence the group policy which provided, among other formal matters, that the policy was issued for a term of one year from November 14, 1927, upon the application of the employer, which application was made a part of the contract and attached thereto, and provides for payment of monthly premiums on the 14th day of each month succeeding the date thereof, within said

term, based upon the amount of insurance then in force; provides for the amount of insurance to be carried by the various employees and the method whereby employees became covered, or when and how they became eligible therefor; provides for a grace of 31 days during which the policy will remain in force, on the payment of all premiums, except the first; provides clerical errors in average premium calculations on the part of the employer shall not invalidate the insurance. Thereafter follows a provision entitled "Individual Terminations" which, in part, is as follows:

"Cancellation of the insurance of any employee insured hereunder may be effected upon or at any time after termination of employment, or when the employee fails to make the required premium contribution, upon written request therefor executed by the employer and filed at the Home Office of the Company. Said request shall bear the date employment terminated or premium contribution ceased. Insurance shall cease to be in force at the end of the policy month in which employment terminated or premium contribution ceased, except that if request for cancellation is received subsequent to the expiration of thirty days following the date employment terminated or premium contribution ceased, insurance shall be continued to the end of the policy month in which the request is received by the Company. Premium charge shall cease at the end of the policy month in which insurance terminates. If through clerical error on the part of the employer discontinuance of insurance is not requested immediately after termination of employment or after discontinuance of premium contribution, the Company will refund all premiums paid beyond the policy month in which employment terminated or premium contribution ceased."

Following this provision is a schedule relative to premium rates of the employees according to age, and a clause entitled "Individual Certificates," as follows:

"The Company will issue to the employer for delivery to each employee whose life is insured under this policy an individual certificate setting forth a statement as to the insurance protection to which the employee is entitled and to whom it is payable, together with a provision to the effect that, in case of the termination of the employment for any reason whatsoever, the employee shall be entitled to have issued to him by the Company, without further evidence of insurability and upon written application made to the Company within thirty-one days after such termination and upon the payment of the premium applicable to the class of risk to which the employee belongs and to the form and amount of the policy at his then attained age, a policy of life insurance in any one of the forms customarily issued by the Company, except term insurance, in an amount

equal to the amount of his protection under such group insurance policy at the time of such termination.

"If desired, the Company will issue said policy (at the original insuring age) to bear the same date as the original insurance. In such event, the difference between the premiums for the amount of the insurance of the new policy from the date of the original insurance, calculated at the term rates contained herein, and the premiums that would have been required under the new policy, with five per cent, (5%) interest shall be paid to the Company."

This is followed by other provisions relative to benefit in event of permanent total disability, payment of death claims in one sum, or installments, statements in application not warranties, incontestibility, misstatement of age, change of beneficiary, and that all agreements must be signed by an executive officer. The provisions last named have no bearing in this case. This is followed by the application for the insurance by E. H. Milton & Sons, and affiliated companies, and by the certificate issued the employer to John Schmidt wherein it is stated:

"This is your Certificate of Membership in the group insured by the Aetna Life Insurance Company under Group Policy No. 3960, provided you are in active service on the date hereof."

The cause was submitted to the court without the aid of a jury and resulted in a judgment for defendant which was accordingly entered. Motion for a new trial was ineffectual, and plaintiff has appealed.

The record discloses that no declarations of law or findings of fact were requested or given.

Defendant urges the appeal should be dismissed for the reason that plaintiff has failed to comply with our rule 17, which requires that the appellant's brief shall contain a distinct and separate allegation of the errors claimed to have been committed by the court. Our rule 17, is as follows:

"The brief on behalf of appellant or plaintiff in error shall distinctly and separately allege the errors committed by the inferior court, and no reference will be permitted in the oral argument to errors not thus specified, nor any reference by either counsel to any authority not cited in his brief, unless for good cause shown the Court shall otherwise direct."

Our rule 18 provides that in case the brief of appellant or plaintiff in error fails to comply with our rule 17, the appeal or writ of error may be either dismissed or the cause continued, at the option of the respondent.

A careful examination of appellant's brief shows there is no distinct and separate allegation of any errors committed by the trial

court, as required by our rule 17. In this situation, it is our duty to affirm the judgment for this reason. Without specific assignments of error plaintiff proceeds, under her points and authorities, to argue certain phases of the case, but we need not go into these matters since they are not properly presented, under our rules.

The judgment should be affirmed, and it is so ordered. All concur.